María Luisa Silva-González, individually and in representation of her minor son, Alfredo Juan Martínez Silva, Plaintiff and Appellee, v. Víctor Antonio Carbonell y Pérez, Defendant and Appellant.

No. 3359. Argued December 23, 1924.—Decided March 26, 1926.

*Rafael Rivera Zayas* for the appellant. *Pascasio Fajardo Martínez* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Defendant appeals from a judgment rendered in a suit brought under section 61 of the Code of Civil Procedure for damages arising out of the death of Captain Alfredo Dimas Martínez alleged to have been caused by the wrongful act of defendant.

The assignment of errors specifies that—

"1st. The court erred in overruling defendant's motion charging disqualification.

"2nd. The court erred in admitting in evidence the document subscribed by the person in charge of the Civil Register of Cabo Rojo, in which he states certain facts relative to the marriage of Alfredo Dimas Martínez and María Luisa Silva.

"3rd. The court erred in admitting in evidence a certificate signed by John A. Wilson, Adjutant General of the National Guard of Porto Rico, in regard to the appointment of Alfredo D. Martínez as an officer of the National Guard, and in regard to his services and his health.

"4th. The court erred in admitting in evidence a document emanating from the Government at Washington relative to the appointment of Alfredo D. Martínez as a reserve officer.

"5th. The court erred in admitting testimony and documentary evidence to show the character of plaintiffs as heirs.

"6th. The court erred in admitting the testimony of Dr. García de la Torre as to the probable duration of the life of Alfredo D. Martínez.

"7th. The court erred in sustaining the complaint and rendering judgment against defendant for an amount not warranted by the evidence introduced at the trial."

■ In support of the first proposition appellant says:

". . . It is true that prejudice is not one of the grounds expressly designated by our statute providing for the disqualification of judges, nevertheless we submit the question to the consideration of this court in order that it may take notice of the fact that defendant did not have an impartial trial, and that the prejudice of the judge influenced greatly his findings, leading him to accept as true only the testimony for plaintiffs, and to give no credence to that for defendant. The authorities say in this regard:

" 'Even where the judge's prejudice does not constitute a ground for disqualification, if the charge is made and the facts alleged indicate the existence of prejudice, the appellate court will carefully scrutinize the record to see that no injustice has been done the complaining party.' 33 C. J. 1000."

We have scrutinized the record and as a result of such scrutiny we are persuaded that no injustice was done defendant. We fully concur in the conclusion reached by the trial judge upon the facts and indeed would have found it much more difficult, if not impossible, to affirm a judgment for defendant upon the merits.

■ The document mentioned in the second specification follows:

"Number 29 Municipality of Cabo Rojo,
 P. R. Office of the Civil Register.
"Alfredo D. Martínez Barbot
with María Luisa Silva y González.

ACT OF MARRIAGE

"In Cabo Rojo, P. R., at 2 o'clock on the fifteenth day of March, 1921, I, E. Romeu Ortiz, in charge of the Civil Register, certify: That there appears in this register no antecedent that would prevent the transcription that I am about to make of the pertinent facts of

an affidavit and certificate of marriage, filed in this office, which I have before me, said particulars being as follows: 1st. That in Cabo Rojo on March 13, 1921, before Francisco Montalvo, Municipal Judge, a civil marriage was celebrated between Alfredo D. Martínez, twenty-four years old, single, farmer, born in Mayagüez and residing on Brau Street, Cabo Rojo, and María Luisa Silva González, twenty-two years old, single, born in Cabo Rojo, and residing on Muñoz Rivera Street, Cabo Rojo. 2nd. That the said Alfredo D. Martínez is the legitimate son of Juan C. Martínez, born in Mayagüez, 47 years old, white, married, farmer, a resident of Cabo Rojo, and now living; and Margarita Barbot, born in Mayagüez, 45 years old, white, married, resident of Cabo Rojo, and now living. That the said María Luisa Silva González is the legitimate daughter of Rodulfo Silva, born in Cabo Rojo, 50 years old, white, married, farmer, resident of Cabo Rojo, and now living; and of María La O. González, born in Cabo Rojo, 42 years old, white, married, resident of Cabo Rojo, and now living. 4th. That this marriage was celebrated before witnesses Ricardo Ramírez Morales, of age, single, physician, born in Cabo Rojo, and residing on Muñoz Rivera Street, Cabo Rojo; and Ernesto Pagán Rusell, of age, divorced, tradesman, born at Cabo Rojo, and residing on Carro Street, San Germán. Dr. E. Romeu Ortiz, in charge of the Civil Register. There is a seal. I CERTIFY: That this is an exact copy of its original that is on page 257, volume 9 of the section of marriages of this Civil Register to which I refer, and in order that it may so appear I issue this certificate which I sign and seal at Cabo Rojo, P. R., on the 20th day of April, 1923.—Signed: Dr. E. Romeu Ortiz.—Municipal Commissioner of Public Health. There is a seal that says: Civil Register, Cabo Rojo, P. R.''

When this paper was offered in evidence counsel for defendant said:

''As to *exhibit C* of plaintiffs, which is the pretended certificate of marriage between Alfredo Dimas Martínez and María Luisa Silva, we object to its admission for the following reason: Because the only thing that is admissible in a court of justice as evidence in this regard is an exact copy of the act of marriage and not the statement as to what such act contains made by the person in charge of it. The law says that the act should be copied, and then the certificate specifying that what precedes is an exact copy of the act should follow, that it appears at such page and such volume. Here it is said: 'In Cabo Rojo, P. R., at 2 o'clock on the fifteenth day of March, 1921, I, E. Romeu Ortiz, certify,' etc., that is, he states what

228

in his opinion is pertinent, and then his office, but this is not the exact copy that the law requires, and therefore we object to this evidence.''

The ruling now complained of reads thus:

''The court decides this matter admitting the document, because it is a copy of the Civil Register to the effect that it is recorded that the marriage took place.''

The writing as a whole, if read in the light of the several dates mentioned therein, does not purport to be an extract of the record entry, but a complete copy thereof. That entry made two days after the celebration of the marriage ceremony comprises the essential portions of the certificate issued or return made by the municipal judge. The document offered in evidence is a certified copy of that entry issued some two years after the entry was made. It is not a subsequent synopsis of the original extract, but a copy of the said entry certified to be a true copy thereof.

Any room for doubt in this regard might have been removed by some sort of a descriptive introduction or prefatory title, but the objection is not based upon any omission in this respect which in any event could hardly be regarded as so serious a matter that a refusal to exclude such evidence would amount to reversible error.

Exhibit F for plaintiffs follows:

''National Guard of Porto Rico, Office of the Adjutant General. Address all official communications to the Adjutant General of Porto Rico.—San Juan, P. R., September 17, 1923.

''To Whom it May Concern:
''This is to certify that:
''Mr. Alfredo D. Martínez, a resident of the municipality of Cabo Rojo, Porto Rico, was appointed a First Lieutenant of Infantry in the National Guard of Porto Rico, on February 25, 1921.
''That First Lieutenant Alfredo D. Martínez, Infantry P.R.N.G. on February 25, 1921, was assigned to Company 'C', 1st Infantry P.R.N.G., stationed at Cabo Rojo, Porto Rico.
''That on March 17, 1922, First Lieutenant Alfredo D. Martínez,

Infantry P.R.N.G., was promoted to Captain and was assigned to command Company, 'C', 1st Infantry, P.R.N.G., stationed at Cabo Rojo, Porto Rico.

"That during the period of March 7, 1922, to January 16, 1923, Capt. Alfredo D. Martínez, Infantry P. R. N. G., was receiving a salary of $720.00 per year paid by the Federal Government as Company Commander.

"That during the annual Field Encampment of the Porto Rico National Guard held at Arecibo from August 13, to August 27, 1922, both days inclusive, Captain Alfredo D. Martínez, Infantry P.R.N.G., was present at said Camp during the whole period and received the sum of $158.00, federal pay as Captain during the fifteen days field service.

"That during the time that Captain Alfredo D. Martínez was serving as officer of the Porto Rico National Guard, from February 25, 1921, to January 16, 1923, date on which he was enjoying good health and never during that time a sick leave of absence was granted to him by this office.

"That the services rendered by Mr. Alfredo D. Martínez as an officer of the Porto Rico National Guard were most reliable and he was considered a bright and a very efficient officer.

"That Company 'C', 1st Infantry, P.R.N.G., stationed at Cabo Rojo, Porto Rico, under the command of Captain Alfredo D. Martínez, Inf. P.R.N.G., was considered at the Camp of Instruction of the Porto Rico National Guard held in Arecibo from August 13, to August 27, 1922, the best company of the Porto Rico National Guard, and as a reward for the good work performed in competition drills by this organization a silver cup was presented to Capt. Martínez.

"That on the night of January 16, 1923, the death of Capt. Alfredo D. Martínez, Inf. P.R.N.G., was notified to this officer by First Lieutenant William H. Montalvo, Infantry P.R.N.G., and at that time was a Captain of the National Guard of Porto Rico and was Commanding Company 'C' 295th Infantry, P.R.N.G.

"That in accordance with National Guard Regulations an officer has to be physically examined every year and from the records of this office it appears that Capt. Alfredo D. Martínez, Infantry, P.R.N.G., was examined in the years 1920–1921–1922 and that said records show that he was in good health and his body in good condition.

"(Signed) John A. Wilson,
The Adjutant General."

Objection was made to the introduction of this certificate upon the following grounds:

"The best evidence that a person has been appointed to an office is his appointment, the commission that has issued it, whether the Governor, or the authority with legal capacity to do so, and that is the evidence that should be brought here, not the certificate with reference to the appointment. Besides, this certificate goes on to say that he enjoyed good health, and this is not the proper thing for an adjutant general to write in a certificate, because that is not within his scope of duty, and he is not a physician, nor has it been shown here that he could certify that this man was in good health. But besides that, this has not been authenticated, not even the signature of Mr. Wilson, and I should like that my brother point out something with regard to this matter. The court is not obliged to recognize the signature of a public official unless the law so provides. The law, as your Honor knows, says that the court is bound to know of the acts of the departments of the government, but this is a personal dealing, and unless the law expressly provides that the court should take judicial notice of said official, the court can not admit this document. On the other hand, this certificate refers to such a person as Alfredo D. Martínez, and we are referring here to Alfredo Dimas Martínez; and unless that person is duly identified, we object."

The commissions signed by the Governor of Porto Rico naming Alfredo D. Martínez first as lieutenant and later as captain of the National Guard were offered in evidence, together with the certificate of service, *supra,* and were admitted without objection.

Section 69 of the Law of Evidence provides that certain documents, among others, "may be proved as follows":

"5. Acts of a municipal corporation of Porto Rico, or of a board or department thereof, by a copy certified by the legal keeper, thereof, or by a printed book published by the authority of such corporation.

"6. Documents of any other class in Porto Rico, by the original, or by a copy, certified by the legal keeper thereof.

"7. Documents of any other class in a State of the Union, by the original or by a copy, certified by the legal keeper thereof, together with the certificate of the secretary of state, a judge of the supreme, superior, or county court, or mayor of a city of such State

that the copy is duly certified by the officer having the legal custody of the original.

"8. Documents of any other class in a foreign country, by the original or by a copy, certified by the legal keeper thereof, under his seal if he has one, with a certificate of the minister or ambassador, or a consul, vice-consul, or consular agent of the United States in such foreign country, to the effect that the document is a valid and subsisting document of such country, and that the copy is duly certified by the officer having the custody of the original;

"9. Documents in the departments of the United States Government, by the certificate of the legal custodian thereof."

Thus the Legislature seems to have distinguished between certificate and certified copy, and to have specified the latter where a summary was intended to be excluded. Perhaps it had in mind the military branch of the public service as included in the War Department.

But be this as it may, such a certificate of military service as that now under consideration would be admissible upon principle even in the absence of any local legislative provision.

"In the first place, it is virtually no more than a certified copy, in summary, of the regular record of service kept in the department; the record would be admissible on the principle of section 1639, *ante*, and the certified copy on that of section 1677, *post*. In the next place, it is made for the specific purpose of being exhibited and used; and to shut off its use in courts is to defeat its purpose in part. In the third place, to call for anything else in lieu of it is impracticable; for all the officers who shared in making the record can not possibly be had as witnesses and the chief of a Federal records-bureau is virtually inaccessible for 'viva voce' testimony; moreover, he personally knows nothing beyond the record. To exclude the certificate is practically to exclude all evidence on the subject.

"In view of the fact that the United States Army and Navy contained more than four million persons during the Great War, it is essential that the admissibility of service-certificates, under whatever name, should be recognized. A few statutes have expressly so provided. The courts, however, have sometimes shown a narrow common-law attitude which not only affronts common sense, but must cause the resentment in the minds of all who value their records of military service. The civilian mind here needs some liberalizing." 3 Wigmore on Evidence, p. 539 and following, sec. 1675a.

 The orthodox doctrine of judicial notice rests essentially upon notoriety. The principle, in so far as applicable here, goes to the identity of the certifying individual as the actual incumbent of the office rather than to the genuineness of the signature. The authenticity of the latter is simply assumed as a matter of practical convenience. The process involves not the recognition of a notorious fact judicially known to be a fact, but a presumption based upon the inherent probability of genuineness, the remoteness of the possibility of forgery and the ease with which an attempted fraud or imposition upon the court could be ascertained and exposed.

The loose language of our local Law of Evidence should not be strictly construed. It merely indicates the general lines along which the power of judicial notice may be exercised. It does not limit the range or the scope of that power which is inherent in every court of justice, but points the way to a wide field of usefulness wherein that power may be utilized at will as an effective aid to the simplification of procedure and to the practical administration of substantial justice.

A clear and comprehensive exposition of this subject may be found in 4 Wigmore, sec. 2131 (f), p. 549, and sections 2161–2169, 2566, 2571, 2576 and 2583.

In any event, whatever statutory authority for the taking of judicial notice that may be required in dealing with documents within the contemplation of subdivision 9 of section 69 of the Law of Evidence is necessarily implied in the plain provision of the law itself, especially if construed in the light of the significant omission of all reference to the additional certificate specified in a number of the preceding subdivisions quoted above.

. The only logical bearing of the certificate itself was upon the measure of damages and the only logical effect that it might have had upon the award to be made would not have tended to increase the amount thereof. Considered in con-

nection with all the other evidence on the question of earning capacity this document was, if anything, more favorable to defendant than to plaintiff.

■ As already pointed out, the original commissions as lieutenant and captain of the National Guard were before the court.

The same physician who had made the official examinations mentioned in the certificate testified at length and in detail as to the sound health and excellent physical condition of the captain.

Both the wife and the father, while admitting the lack of accurate information as to the exact amount received by Captain Martínez in compensation for his services as a member of the National Guard, estimated the revenue derived from this source alone as approximating on an average about one hundred dollars per month. This testimony was uncontradicted save in so far as the sums named in the certificate would seem to indicate a somewhat lower rate during the period of ten months, more or less, covered thereby.

One of the witnesses last above mentioned also said that Captain Martínez had been recommended for promotion to the rank of major and this statement was likewise unchallenged unless it may be regarded as negatived to some extent by the silence of the certificate upon this point.

■■ From the standpoint of probative value the commission as captain in the Officers Reserve Corps is even more obviously a negligible factor as an element in the measure of damages. Upon tendering this document, it was not pretended or claimed by counsel for plaintiff that Martínez was receiving, had received, or very probably would at some future time receive any salary under such appointment. The theory seems to have been that the commission might be regarded as having some bearing, more or less remote, upon the general question of earning capacity. Regarded as a more or less honorary title and additional circumstance indicative of the military rank and standing of Martínez at

the time of his death, the paper was perhaps entitled to some weight, however slight, in this regard. It is not intimated by counsel for appellant, nor is there anything in the record to indicate that the trial judge misunderstood or over-estimated in any way its probative value. From the evidence as a whole viewed in the light of the findings and conclusions filed by the trial judge, it is quite clear that the exclusion of the document would not have affected the result or the amount of damages actually awarded in any way or to any extent whatever.

To reverse the deliberate judgment of a trial court upon the merits of an exceptionally clear case for mere technical errors in the admission of cumulative evidence going only to the measure of damages when it appears beyond any reasonable doubt that the exclusion of such evidence could not have affected the result would amount to a travesty on justice.

The argument under the 5th proposition specified in the assignment does not question the doctrine announced in *Soriano* v. *Rexach*, 23 P.R.R. 531; *Morales* v. *Landrau*, 15 P.R.R. 761, and *Casanovas & Co.* v. *Ramírez*, 25 P.R.R. 581. The contention is that a different rule should govern in an action brought under section 61 of the Code of Civil Procedure. The only authority cited in this connection, however, is 8 R.C.L. 761, which is by no means conclusive upon the point here presented.

Appellant also points out that the complaint fails to specify whether plaintiffs were designated as heirs in a last will and testament or were claiming such status under a judicial decree. Following this comes the contention that in the absence of any averment of the matters enumerated in section 19 of the Law of Special Proceedings evidence of heirship should have been excluded. In this connection it is intimated that such evidence was admitted over repeated protest of defendant and that exceptions were duly taken to such rulings. But no reference is made to any page or

portion of the transcript, and as heretofore frequently indicated in previous cases this omission without more would suffice to excuse us from passing upon the question thus sought to be raised.

■ Inasmuch, however, as we have already examined the record for another purpose, mention may be made in passing of the only two incidents that have come to our attention which might be regarded as lending any semblance of color to appellant's theory.

While the witness Plinio Castro was on the stand the following incident occurred:

"Q.—Did you know Alfredo Dimas Martínez since a small boy? A.—Since a small boy. Q.—Do you know if he is alive or dead? A.—Dead. Q.—Do you know if he left a son? A.—One. Q.—What is his name? A.—His name is Alfredo Juan. Q.—Do you know if he had any natural or any other legitimate son? A.—None. Q.—Any acknowledged natural son? A.—None. Defendant:—I am going to object to that question, for the following reasons: The Court:—It has already been answered, Mr. Attorney. Defendant: Then we pray for its elimination; your Honor may admit it, but we want to explain the reason. The Court: The court admits the question and the answer and will give to them the weight that they will have together with all the evidence. Defendant:—We take exception, because this action should have been brought based upon the previous character as heir, and here no will or declaration of heirship of the deceased person has been introduced in order to show this fact. In this case it is attempted to introduce this oral evidence so that the court may decide it, and for these reasons it is that we take exception. The Court:—The court admits it."

Again while Juan C. Martínez, father of the deceased captain, was testifying we find the following:

"Q.—Your son was married? A.—My son was married to Mrs. María Luisa Silva. Q.—Did they have any children? A.—By this marriage he had a little son who was about seven months old at the time of the assassination of my son. Q.—Is he living? A.—Yes, sir, he lives. Q.—Does that son live? A.—Yes, sir, he lives here in Mayagüez. Q.—Does he live with you and his mother? A.—He lives with me and his mother. Q.—Did your son live with you? A.

—Always, all my children live with me except my daughter. Q.—
Do you know if your son had any natural or legitimate or acknowl-
edged natural son? A.—No, sir. Defendant:—I object to that
question. The Court:—The court admits it. Defendant:—I take
exception.''

In both instances the objection came too late. In neither
was reference made to any question of variance between the
complaint and the testimony. Much less was it intimated
that defendant was taken by surprise or in any way misled
to his prejudice. Obviously such matters can not be raised
for the first time on appeal.

 The error, if any, in admitting the testimony of Dr.
García de la Torre was invited by defendant and can not
now be urged as a ground for reversal.

 The whole of the argument under the seventh prop-
osition submitted by appellant is contained in the following
paragraph:

"Seventh error.—The marriage between plaintiff and Alfredo D.
Martínez and the essential quality of heirs of the deceased Alfredo
D. Martínez not having been shown, and by virtue of all the assign-
ments of error heretofore made, the court erred in sustaining the
complaint and judging against defendant for the sum expressed in
the judgment. On the other hand, said amount is excessive and the
court violated the rule that determines the amount of indemnity, not
taking into consideration the resources of defendant, the income with
which the deceased contributed to the maintenance of his wife and
son, and besides, the principle that when a minor is involved, the
indemnity should be determined taking into account the time that
will elapse up to his majority which is the time during which the
father is bound to maintain and feed him. See 8 R.C.L. 833.''

Even if the premises involved had any foundation in fact,
which apparently they have not, such generalization in state-
ment and conclusion without either argument or reference
to the pertinent portions of the transcript would not impose
upon this court any obligation to search the record for data
upon which to base a reversal.

The judgment appealed from must be affirmed.